## THE SOCONY NO. 115.
### THE SYOSSETT.
## STANDARD TRANSP. CO. v. LONG ISLAND R. CO.

District Court, S. D. New York.
Feb. 11, 1932.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (P. F. Shortridge, of New York City, of counsel), for claimant.

CAFFEY, District Judge.

The situation of the Syossett came about, without fault on her part, through an un-lighted buoy being caught in her propeller. She was still, as I read the rules, a vessel under way. She was out of control, to be sure, but she was drifting or moving. Moreover, at the time of the collision, as I understand the proof, the Syossett had been incapacitated to the extent that she was for only some forty or fifty minutes. During that forty or fifty minutes, and up to the time of the collision, her crew were engaged in an effort to disentangle or relieve her from her difficulties.

I cannot fail to believe the testimony of the members of the crew of the Syossett that, after the propeller became entangled with the unlighted buoy, the Syossett gave frequent alarm signals. That was a natural thing to do under the circumstances. The testimony of the witnesses for the Socony does not really conflict with that of the Syossett witnesses on this point. One of the Socony witnesses says he did hear some alarm signals, as I understood him, although he did not realize the source of them. It is undisputed that, following the signal from the Socony of a single blast, as an overtaking and passing signal, the Syossett made prompt reply by an alarm signal.

I think also the proof establishes that the lookout on the Socony was on the bridge back even with the pilot house. He might easily have been 200 or more feet further forward, because the proof is undisputed that the tow extended out as much as 200 feet or more forward of the bridge. The absence of the lookout from the forward end of the tow may be the real explanation of the failure of the following vessel to discover that the vessel ahead was out of control sufficiently early to avoid her.

The Socony, being an overtaking vessel, under the regulations, very strictly enforced by the decisions of the Circuit Court of Appeals, had the duty of procuring an assent to a safe passing, and of acting with notice that the vessel ahead might at any time, in advance of a signal from the following vessel, asking assent to her passing, do something that would interfere with the safe passing. If that be true, it seems to me that the reason of the rule applies precisely to the situation here, where something might be the matter with the vessel ahead.

Again, it seems to me that the limitation prescribed in the Inland Rules upon lights to be used in harbors or inland waters constituted a complete prohibition upon the Syossett using the red light signal. It may very well be that her putting up two red

lights would have been quite an effective warning; but I think that it would have constituted a violation of the regulations, and if, while engaged in a violation of the regulations, something had happened, why, she would have been very much embarrassed in defending herself from liability.

I cannot read article 1 of the Inland Rules, on the use of lights, as otherwise than prohibiting the use of two red lights.

I have not discovered the provision, to which I understood reference was made, conferring on a vessel subject to the Inland Rules the right to comply with the regulations prescribed by the International Rules unless at variance with the Inland Rules; but, however that may be, it seems to me that article 1 of the Inland Rules itself constitutes a prohibition against the use while navigating inland waters of lights as prescribed by the International Rules.

I read with interest the case of The Ant (D. C.) 10 F. 294, and have examined article 11, governing lights at anchor. In the first place, it seems to me very doubtful whether the reasoning adopted in The Ant should be followed and more doubtful whether it should be extended. It may be that, in view of the definition embodied in the preliminary part of the Inland Regulations of a vessel under way—to which, as I recall my reading of the opinion in The Ant, no reference was made—there would be some plausibility in the position there taken with respect to a vessel aground; but the reasoning of it does not appeal to me as at all applicable to a vessel, as in the case at bar, which is under way. Indeed, if pursued logically, it might very easily get away or relieve from the restrictions of these very positive and very explicit regulations. We are going a good step away from an anchored vessel in the case of a vessel such as the Syossett. She had but forty or fifty minutes before encountered a buoy, and the buoy had become entangled in her propeller. At the time of collision she was still engaged in an effort to procure a release. Because of these circumstances there seems to me to be no warrant for subjecting her to the regulations prescribed for a boat at anchor.

A boat aground is in a very different situation from that of the Syossett. Certainly the reasoning which is applicable to a boat at anchor, so far as lights are concerned, is very much nearer in application to a boat aground than it would be to one which is still under way, within the regulations, although drifting and out of control.

There is another thing about the opinion in The Ant. Some weight apparently was there given by the court to evidence as to custom—what was understood among men engaged in harbor traffic. There is no such evidence in this case—certainly none to support the view that there was a general understanding among harbor navigators that in case of a drifting vessel red lights or anchor lights would be used. To the contrary, in so far as evidence was taken on the issue, as I understood, there was no disagreement among the witnesses that they knew of no well-established instances in which at night red lights or other unusual lights were employed to designate a vessel out of control.

It seems to me, gentlemen, that no fault on the part of the Syossett has been established. It seems to me, on the other hand, that the burden was on the Socony as the overtaking vessel. Under those circumstances I think the libel must be dismissed.